IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID ORMISTON, | ) | 2:10-cv-00830-GEB-KJN |
| Plaintiff, | ) | |
| v. | ) | ORDER GRANTING MOTION TO DISMISS CLAIMS AGAINST QUAM, KLUTZ, AND BOARD OF NURSING HOME ADMINISTRATION; AND DENYING MOTION TO DISMISS TEDDINGTON* |
| STATE OF CALIFORNIA, CHARLES TEDDINGTON, ED QUAM, BOARD OF NURSING HOME ADMINISTRATION, BRENDA KLUTZ, | ) | |
| Defendants. | ) | |

Defendants State of California, Board of Nursing Home Administration, Charles Teddington, Ed Quam, and Brenda Klutz (collectively, "Defendants") move for dismissal of Plaintiff's First Amended Complaint ("FAC") with prejudice, under Federal Rule of Civil Procedure ("Rule") 12(b)(6), arguing that the FAC fails to allege facts sufficient to state viable claims. Plaintiff filed an opposition in which he includes the statement that he "will dismiss the State of California." Therefore, the State of California is dismissed.

---

* This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

# I. Legal Standard

To avoid dismissal of a claim in a complaint under Rule 12(b)(6), a plaintiff must allege "enough facts" showing that "a claim to relief . . . is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1951).

In analyzing whether a claim has facial plausibility, "[w]e accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." Daniels-Hall v. Nat'l Educ. Ass'n, --- F.3d ----, 2010 WL 5141247, at *3 (9th Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss, 572 F.3d at 969 (quoting Twombly, 550 U.S. at 557).

///

## II. Factual Allegations in Plaintiff's FAC

The allegations in Plaintiffs' FAC are mainly the following. Plaintiff "was licensed by the State of California as a Nursing Home Administrator . . . to operate a skilled nursing facility . . . in the city of Davis," in California. (FAC ¶ 12.) Plaintiff was operating that facility in April, 2000, when he authorized the emergency discharge of a resident because "that resident posed an immediate and substantial danger to other residents and the staff at that facility." Id. ¶¶ 12-13.

In April, 2003, "defendants QUAM and KLUTZ, acting within the scope of their respective authorities directed defendant TEDDINGTON to conduct an investigation into" Plaintiff's emergency discharge of the resident. Id. ¶ 13. Teddington was an "investigator retained by the DEPARTMENT OF HEALTH SERVICES"; Quam, was "a District Administrator with the BOARD OF NURSING HOME ADMINISTRATION"; and Klutz "was an Administrator Supervisor in the Licensing and Certification Branch of the BOARD OF NURSING HOME ADMINISTRATION." Id. ¶¶ 6-8. "Substantial evidence and sworn court testimony was available for review to the defendants prior to the commencement of the TEDDINGTON investigation to lead any reasonable person to conclude that the emergency discharge of the resident was justified and required[.]" Id. ¶ 14. "[D]efendants QUAM and KLUTZ directed TEDDINGTON to conduct an investigation for the purposes of justifying action against the license of [Plaintiff] regardless of the true facts." Id. ¶ 15.

Plaintiff alleges if the investigation had "been fairly conducted or adequately reviewed, [it] would have disclosed that there were no facts to justify any action against" his license; however, Defendants were "determined to bring an unjustified and unmeritorious administrative action against [Plaintiff] to deprive him of his Fifth

Amendment property rights to his license[.]" _Id._ ¶ 16. "On or about August 20, 2003, defendants QUAM and KLUTZ authorized the commencement of an administrative complaint to be filed against" Plaintiff. _Id._ ¶ 17. "Defendants thereafter compounded the damage done to [Plaintiff] during the [administrative] proceeding by knowingly presenting the perjured testimony of CHARLES TEDDINGTON, with knowledge of the falsity of the testimony, and persisted in the pursuit of the action[.]" _Id._ An Administrative Law Judge found "the actions of [Plaintiff] were not only justified, but were required by the regulations which dictate his behavior under his license and further found that the testimony of TEDDINGTON, as the chief witness at the proceedings, was false and tainted the entire proceeding." _Id._

Plaintiff alleges that Defendants violated his "Civil Rights under Color of State Law," and conspired "to Violate his Civil Rights under Color of State Law." _Id._ 5:7-8. Plaintiff's FAC is comprised of the following three claims: 1) "Due Process-Liberty Interests"; 2) "Due Process-Property"; and 3) "Due Process-Liberty[.]" _Id._ 5:7-8, 6:23-24, 7:19-20. Plaintiff alleges in his first claim, titled "Due Process-Liberty Interests":

> Defendants, and each of them, acted in concert with each other pursuant to official policies, plans and training of their respective agencies, which are departments of STATE OF CALIFORNIA. These departments promulgated the policies and plans and conducted the training which manifests a deliberate indifference to the constitutional rights of persons lawfully practicing his or her chosen profession and, more particularly, the rights of plaintiff.

_Id._ ¶ 24. Plaintiff alleges because of these acts he has suffered loss of reputation, incurred attorneys' fees rebutting the false allegations, and suffered emotional distress associated with the prosecution to which Defendants subjected him. _Id._ ¶ 25. Plaintiff alleges in his second

claim, titled "Due Process-Property", that Defendants acted to deprive him of his property interest in his state granted license "by making the false statements[.]" Id. ¶¶ 29-30. Plaintiff alleges in his third claim, titled "Due Process-Liberty", that Defendants sought to deprive him of his liberty interest in his reputation and license "by making the false statements[.]" Id. ¶¶ 34-35.

### III. Discussion

#### A. Claims against Quam and Klutz

Defendants argue Plaintiff's FAC fails to state a claim for relief against Quam or Klutz since "Plaintiff does not allege that either Defendant personally participated in the violation of [Plaintiff's] civil rights[;] . . . that either Defendant 'directed' [Teddington] to violate [Plaintiff's] civil rights[;] . . . [or] that either Defendant implemented a constitutionally infirm policy or procedure[.]" (Mot. to Dismiss ("Mot") 4:23-27.) Defendants argue Plaintiff's only allegation against Quam and Klutz "is that as supervisors they 'directed' Mr. Teddington to investigate the April 13, 2000, incident." Id. 4:22-23. Plaintiff counters his FAC "alleges the required direct involvement" and that "[a] fair reading of the complaint shows that it alleges that not only were Mr. Quam and Ms. Klutz the supervisors of Charles Teddington, but that they directed his actions." (Pl.'s Mem. P. & A. in Opp'n ("Opp'n") 1:25, 2:25-26.)

Each of Plaintiff's claims is alleged under 42 U.S.C. § 1983. (FAC ¶¶ 18-37.)

> Section 1983 provides, in pertinent part, that "(e)very person who, under color of any statute of any state . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution . . . , shall be liable to the party injured . . . ." A person "subjects" another to the deprivation of a constitutional right, within the meaning

of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.

Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978) (citations omitted).

"A supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989). "Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Id. (internal quotation marks omitted). However, vicarious liability is inapplicable to § 1983 actions and thus "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. ----, 129 S. Ct. 1937, 1948 (2009).

Plaintiff has failed to allege facts from which a reasonable inference could be drawn that Quam and Klutz had personal involvement in the constitutional deprivations about which he complains. Plaintiff has merely alleged that Quam and Klutz directed Teddington to investigate the emergency discharge of a resident. Plaintiff's FAC is merely comprised of conclusory allegations asserting what Quam and Klutz should

have known before the Teddington investigation commenced that the investigation was conducted based on a false premise and for illicit purposes, and that Quam and Klutz knew Teddington would present false testimony about Plaintiff. (FAC ¶¶ 13-17.)

However, conclusory allegations are "not entitled to be assumed true." Ashcroft, 129 S. Ct. at 1951. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Nor has Plaintiff alleged sufficient non-conclusory factual allegations to support his claim that Quam and Klutz failed to train, supervise, or control Teddington. See Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (internal quotation marks omitted). Plaintiff has merely alleged the conclusory allegations that "departments promulgated the policies and plans and conducted the training which manifests a deliberate indifference to the constitutional rights of persons lawfully practicing his or her chosen profession and, more particularly, the rights of plaintiff." (FAC ¶ 24.) These conclusory allegations are insufficient to state a claim. See Ashcroft, 129 S. Ct. at 1954 ("Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss.").

The remaining question is whether Plaintiff should be given yet another opportunity to amend his complaint. Defendants Quam and Klutz were previously successful in having Plaintiff's original complaint dismissed; however, Plaintiff's FAC is fundamentally identical to his dismissed complaint. Further, Plaintiff argues in his opposition that the allegations in his FAC are sufficient to state claims against Quam and Klutz. This argument evinces Plaintiff lacks the necessary factual information to state a claim against either Quam or Klutz, and that Plaintiff lacks awareness of facts sufficient to state viable claims. Since it is evident that Plaintiff's FAC rests on the same factual allegations found deficient in Plaintiff's original complaint, it is apparent that further amendment "could not possibly cure the deficiency" in Plaintiff's claims against Quam and Klutz. Therefore, Plaintiff's claims against these defendants are dismissed with prejudice. <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

### B. Claims Against Teddington

Defendants also seek dismissal of the claims against Teddington, arguing the FAC "does not state any facts sufficient to state a claim" against Teddington; specifically, Defendants contend Plaintiff "makes only generalized, conclusory assertions of wrongdoing without any specific fact establishing the Mr. Teddington engaged in any wrongdoing." (Mot. 5:3-6.) However, Plaintiff's allegations against Teddington satisfy the plausibility standard. Therefore, this portion of the motion is denied.

///

///

## C. Claims Against Board of Nursing Home Administration

Defendants also argue that Defendant the Board of Nursing Home Administration is an agency of the State of California and therefore, it is "immune from suit pursuant to the Eleventh Amendment[, and] Defendants do not consent to being sued in federal court." (Mot. 5:20-23.) Plaintiff counters that "the 11th Amendment _may_ provide immunity for State agencies, [if] the agency may be considered the alter ego of the State[;]" however, Defendants have failed to adequately address "whether the Board of Nursing Home Administration may be considered the alter ego of the State of California for immunity purposes." (Opp'n 3:23-24, 4:10-12).

"Despite the breadth of the Eleventh Amendment's reach, not all state-created or state-managed entities are immune from suit in federal court." Durning v. Citibank, N.A., 950 F.2d 1419, 1423 (9th Cir. 1991). "Under the 'arm of the state' doctrine, a state agent or agency is immune from suit under the Eleventh Amendment because 'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials [or state entities] are nominal defendants.'" Id. (quoting Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464 (1945)).

> To determine whether a governmental agency is an arm of the state, the following factors must be examined: [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 250-51 (9th Cir. 1992). "[I]t is clear that the Eleventh Amendment prohibits actions for

damages against state agencies when Congress has failed to express a contrary intent." Id. at 250.

Plaintiff alleges in the FAC that the "BOARD OF NURSING HOME ADMINISTRATION is a governmental agency" and "a department within the defendant STATE OF CALIFORNIA." (FAC ¶¶ 9-10.) Further, Plaintiff seeks damages from the Board of Nursing Home Administration. Id. 8:16-20. Since the Board of Nursing Home Administration is a department within the State of California and a money judgment against this defendant would be satisfied out of state funds, the Board of Nursing Home Administration is immune from suit under the Eleventh Amendment. Therefore, Defendants motion to dismiss Plaintiff's claims against the Board of Nursing Home Administration with prejudice is granted.

### IV. Conclusion

For the stated reasons, Plaintiff's claims against defendants Quam, Klutz, and the Board of Nursing Home Administration are dismissed with prejudice and these defendants are no longer a party in this action. Further, Defendant Teddington's dismissal motion is denied.

Dated:   January 28, 2011

_____
GARLAND E. BURRELL, JR.
United States District Judge